The Honorable Allen Gordon State Senator P.O. Box 558 Morrilton, Arkansas 72110
Dear Senator Gordon:
This is in response to your request for an opinion on several questions concerning the garnishment of state aid due a school district from the Arkansas Department of Education. Specifically, your questions are as follows:
 1. If an Arkansas bank loans a local school district money, the local school district defaults on the loan and the bank gets a judgment against the school district:
 A. May the bank garnish Minimum Foundation Program Aid due the local school district from the Department of Education?
 B. After July 1, 1996, may the bank garnish State Equalization Funding due the local school district from the Department of Education?
 C. Under both A and B above, what priority to the school district's anticipatory funds will the bank have against other creditors?
 2. If the school district later consolidates with another school district, may the bank garnish either Minimum Foundation Program Aid or State Equalization Funding due the school district from the Department?
It is my opinion that the answers to both questions 1(A), 1(B) and question 2 are "yes." I cannot provide an answer to question 1(C) because an answer to this question would require more facts.
In response to each of your questions, I assume you are referring to a situation where the school district defaults on a unsecured loan made by the bank and the bank thereafter obtains a judgment against the school district for the amount of the unpaid balance and then seeks to enforce its judgment through garnishment of state aid due the district, and not to a situation where the bank has obtained prior security for its loan under A.C.A. § 6-20-402(d) authorizing the pledging and payment of state aid payments due the school district directly to a creditor.
That being said, it appears that state aid moneys belonging to a school district, while still in the hands of the Department of Education, may be subject to garnishment.[1] While initial questions may arise as to the ability of a creditor to garnish funds held by a state agency, it should be noted that an Arkansas statute appears to authorize this action. Section 16-110-413 (Supp. 1995) provides as follows:
 (a)(1) Any indebtedness, goods and chattels, moneys, credits, or effects, except for refunds for overpayment of Arkansas state income tax belonging to a defendant in a civil action and in the hands or possession of the State of Arkansas, or any subdivision thereof, institution, department, or special district or instrumentality of the State of Arkansas, shall be subject to garnishment as is now provided by law.
 (2) Nothing in subdivision (a)(1) shall be construed in any way to eliminate or limit the provisions of title 26, chapter 36, subchapter 3 concerning the set-off of debt owed to a state program.
 (b)(1) Any writ of garnishment sued out pursuant to this section shall be served upon the individual representing the State of Arkansas, subdivision thereof, institution, department, special district, or instrumentality of the State of Arkansas, who has such indebtedness, goods and chattels, moneys, credits, or effects in his custody, and he shall answer the writ and satisfy the garnishment as provided by law.
 (2) However, if the writ of garnishment is of salary or wages, it shall be served upon, answered, and satisfied by the institution, agency, department, special district, or instrumentality employing the person whose salary or wages are sought by the garnishment.
 (c) A writ of garnishment shall be sued out pursuant to this section only after judgment.
This statute has been held constitutional when challenged under art. 5, § 20 of the Arkansas Constitution (stating that the state shall never be made a defendant in any of her courts). See Ross v. Rich, 210 Ark. 74,194 S.W.2d 297 (1946). It would appear therefore that this statute serves as authority for a judgment creditor to garnish funds belonging to the school district which are in the hands of the Department of Education. In my opinion, additionally, the existence of a procedure in A.C.A. §6-20-402 (d) for pledging state aid payments as security for a loan to a school district on the front end of the transaction does not impliedly prohibit a creditor from obtaining a judgment against the school district on an unsecured loan and thereafter seeking to enforce that judgment, once obtained, through ordinary garnishment proceedings of the state aid in the hands of the Department. The fact that school districts are authorized to give additional security for their obligations by pledging state aid payments under A.C.A. § 6-20-402(d) does not in my opinion forestall otherwise available remedies of judgment creditors. It is therefore my opinion that the answer to your first question is "yes."
In response to your second question (question 1(B)), the conclusion reached above would appear to apply with equal force after July 1, 1996 when the new school funding legislation goes into effect (see Act 917 of 1995) and thereby replaces "Minimum Foundation Program Aid" with "State Equalization Funding." Again, however, I am assuming your question refers to garnishment by a judgment creditor bank, and not to a "front end" secured creditor bank under A.C.A. § 6-20-402(d). See on that topic Op. Att'y Gen. 95-354 at n. 1. A judgment creditor bank under A.C.A. §16-110-413 would appear to be authorized to garnish any moneys in the hands of the Department of Education which belong to the debtor school district, whether the funds are classified as "Minimum Foundation Program Aid," or "State Equalization Funding."
In response to your third question (question 1(C)), I cannot analyze the priority issues or relative status of various creditors without knowing the exact nature, timing and perfection status of their interests. In any event, this is a question to be addressed by the legal counsel for the various creditors.
In response to your final question, concerning a possible consolidation of a debtor district with another school district, I should note that A.C.A. § 6-13-1206 (a) provides that: "[a]ny resulting [annexed or consolidated] district created under this section shall succeed to the property of the district dissolved, shall become liable for the contractsand debts of such district, and may sue and be sued therefor." Emphasis added. It appears, therefore, that the answer to your final question is "yes."
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh
[1] There may be a question, however, as to when the moneys in the hands of the Department actually become the property of the local school district, as opposed to being moneys belonging to the Department of Education.